```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/9/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RHONDA AMBRISTER, individually, and as
legal guardian of R.D.,

             Plaintiff,

    -against-

DAVID C. BANKS, in his official capacity as
Chancellor of New York City Department of
Education, et al.,

             Defendants.

23-CV-2746 (JGLC) (BCM)

**REPORT AND
RECOMMENDATION TO THE
HON. JESSICA G. L. CLARKE**

**BARBARA MOSES, United States Magistrate Judge.**

      Having exhausted her administrative remedies, plaintiff Rhonda Ambrister, individually

and as guardian of her niece, R.D., filed this action pursuant to the Individuals with Disabilities

Education Act (IDEA), 20 U.S.C. § 1400 *et seq*., alleging that the New York City Department of

Education (DOE) failed to offer R.D. a free appropriate public education (FAPE) from February

11, 2022, through the end of the 2022-23 school year, and therefore that the DOE should fund the

cost of R.D.'s tuition and related services at the private school chosen by plaintiff.

      R.D., who was born in February 2006, is diagnosed with cerebral palsy and a seizure

disorder resulting from a traumatic brain injury. *See* Joint Statement of Undisputed Facts (SMF)

(Dkt. 28) ¶ 5; R. 497, 502.[1] In 2019, after Hurricane Dorian destroyed the school that she attended

in the Bahamas, plaintiff brought her (and her non-disabled sister) to New York City so that R.D.

could attend the International Institute for the Brain (iBrain), which is a private school in

Manhattan for children with brain injury or brain-based disorders. R. 570, 1064, 1102, 1104.[2]

---

[1] "R.__" refers to the consecutively paginated Certified Administrative Record (CAR) (Dkts. 25-1 through 25-8).

[2] The record is clear that R.D.'s family came to New York for the purpose of enrolling her in iBrain. After the hurricane, the founder of iBrain, Patrick Donahue, "reached out" to plaintiff about R.D. attending iBrain. R. 1102. When R.D. and her family arrived in New York, they were provided with an apartment paid for by iBrain. R. 1103. The iBrain website featured R.D.'s story, and

R.D. began attending iBrain in January 2020, R. 1064, but in March 2020, due to the COVID pandemic, she and her family moved back to the Bahamas. R. 567, 1065. Thirteen months later, in April 2021, plaintiff and R.D. returned to New York, R. 568, 1065, where R.D. attended iBrain in person, R. 568, until April 2022. At the end of that month, she and her guardian again moved back to the Bahamas, this time due to the death of a family member. R. 1067-68, 1111.

On February 11, 2022, the DOE issued an Individual Education Plan for R.D. (the 2022 IEP), R. 573-631, recommending that she be placed in a specialized public school. On March 17, 2022, plaintiff filed an administrative due process complaint (2022 DPC), R. 184-90, alleging that the 2022 IEP denied R.D. a FAPE and requesting an order directing payment by the DOE directly to iBrain for the full cost of R.D.'s tuition, and related services for the 2021-22 extended school year, as well as reimbursement of prospective funding of her transportation costs. R. 188. On August 29, 2022, after an evidentiary hearing, an impartial hearing officer (IHO) found that the 2022 IEP was procedurally and substantively adequate, and denied the relief sought. R. 43-93. On December 1, 2022, a state review officer (SRO) affirmed the IHO's determination. R. 14-42. This action followed.

Now before me for report and recommendation (*see* Dkt. 6) are (1) plaintiff's motion, filed on November 13, 2023, for the entry of summary judgment in her favor (Dkt. 26); and (2) defendants' cross-motion, dated December 20, 2023, for the entry of summary judgment dismissing plaintiff's complaint. (Dkt. 31.) After careful review of the record, I conclude that the 2022 IEP was procedurally and substantively adequate. I therefore recommend, respectfully, that plaintiff's motion be denied and that defendants' cross-motion be granted.

---

solicited donations to iBrain to support R.D. and her family. *See Kia's Journey after Hurricane Dorian*, iBRAIN, https://ibrainnyc.org/kias-story (all websites last visited August 9, 2024).

## I.    BACKGROUND

### A.    The IDEA

Under the IDEA, states receiving federal special education funding are required to provide a FAPE to children with disabilities. 20 U.S.C. §§ 1400(d)(1)(A), 1411, 1412(a)(1)(A); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) ("The IDEA requires states receiving federal special education funding to provide disabled children with a FAPE."). To meet the requirements of the IDEA, a school district must develop an IEP, for each disabled, student that is "reasonably calculated to enable the child to receive educational benefits." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (quoting *T.M.*, 752 F.3d at 151); *see also* 20 U.S.C. § 1414(d) (governing development of IEPs). If the IEP is inadequate, the school district may, under certain circumstances, be required to reimburse the student's family for the cost of obtaining appropriate educational services privately. *See Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (concluding that the IDEA "provides for placement in private schools at public expense" where it "is not possible" to provide a FAPE in "regular public schools"); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 13 (1993) (holding that the private school need not be state-approved).

"Under the Supreme Court's *Burlington/Carter* test, parents are entitled to reimbursement of private-school tuition only if: (1) the IEP and proposed placement fail to provide a FAPE; (2) the parent's private placement was appropriate to the child's needs; and (3) equitable considerations favor the parent's claim." *T.M.*, 752 F.3d 145, 152 (2d Cir. 2014). Each prong of the test must be satisfied. Thus, if it is determined at step one that the school district's IEP is "procedurally and substantively adequate," the reviewing court "need not consider" the remaining prongs. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 258 (2d Cir. 2012).

While IEPs are subject to "numerous procedural and substantive requirements," they are "not required to 'furnish[] . . . every special service'" necessary to maximize the potential of each student." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 199 (1982)). "Rather, the IDEA requires that IEPs provide a 'basic floor of opportunity,' consisting of services that are 'individually designed to provide educational benefit' to a child with a disability." *Id.* (quoting *Rowley*, 458 U.S. at 201).

"The IDEA also requires states to provide an administrative procedure for parents to challenge the adequacy of their children's IEPs." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (citing 20 U.S.C. § 1415(b)(6)). New York has implemented a "two-tier" system of administrative review. *Ventura de Paulino*, 959 F.3d at 526; *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002). In the first tier, a parent can file a DPC challenging the IEP and requesting a hearing before an IHO. N.Y. Educ. L. § 4404(1). In the second tier, parties aggrieved by the IHO's ruling can appeal the decision to an SRO, N.Y. Educ. L. § 4404(2); 20 U.S.C. § 1415(g), and the SRO's decision may in turn be challenged in either state or federal court, *see* 20 U.S.C. § 1415(i)(2)(A).

### B.     Facts and Procedural History

R.D. was at all times relevant to this action a "child with a disability" as defined by 20 U.S.C. § 1401(3). SMF ¶¶ 2, 4-5; R. 14, 46, 49, 980. She is nonverbal, cannot read or write, and communicates through gestures, vocalizations, and assistive technology (a single button switch). SMF ¶ 6; R. 49, 433-34. She is ambulatory, but requires assistance in all daily activities (including bathing, dressing, feeding, and toileting) due to "impulsivity, poor safety awareness, and potential for seizure." SMF ¶ 7; R. 16, 49.

iBrain provides services according to an educational program that it developed for R.D. *See* R. 264-88 (2020 iBrain IEP); R. 319-46 (2021 iBrain IEP); R. 437-95 (2022 iBrain IEP). The iBrain IEPs include – and iBrain in fact provided – a 12-month school year in a 6:1:1 classroom (meaning a class with 6 students, 1 teacher, and 1 aide). SMF ¶ 9. R.D.'s program at iBrain included one-on-one sessions of music therapy, physical therapy (PT), occupational therapy (OT), speech-language therapy (SLT), and vision education services (VES). SMF ¶¶ 9-11. The 2022 iBrain IEP, dated January 29, 2022, added one-on-one "hearing education services" (HES), that is, sign language support. R. 459-60, 476-78. The DOE concedes that iBrain would be an appropriate unilateral placement if the DOE failed to provide a FAPE. *See*, *e.g.*, SMF ¶ 30.

In January 2020, the DOE developed a Comparable Service Plan (CSP) for R.D.,[3] followed by formal IEPs in June 2020 and May 2021, each recommending that she be placed in a District 75 specialized public school. *See* R. 102-03 (discussing 2020 CSP); R. 289-318 (2020 IEP), R. 356-94 (2021 IEP).[4] R.D.'s placement for the 2021-22 school year was P.S. 79, the Horan School. R. 399. Plaintiff rejected the DOE's IEPs, kept R.D. at iBrain, and filed a series of DPCs alleging that the DOE failed to provide R.D. with a FAPE for the 2019-20, 2020-21, and 2021-22 school years. *See* R. 95.

Meanwhile, the DOE investigated R.D.'s residency. On January 4, 2021, the DOE determined that she was not a New York City resident between March 2020 (when she moved

---

[3] A CSP is offered to "ensure immediate support" for a newly-enrolled public school student with disabilities before a formal IEP can be developed. *See Special Education Resources*, NYC Public Schools, https://www.schools.nyc.gov/docs/default-source/default-document-library/special-education/special-education-resources ("Once your child is attending school, a team will begin the evaluation process for a formal Individualized Education Program (IEP).").

[4] District 75 "provides highly specialized instructional support for students with significant challenges" in a variety of settings and locations throughout New York City. *See District 75*, NYC Public Schools, https://www.schools.nyc.gov/learning/special-education/school-settings/district-75.

back to the Bahamas) and April 2021 (when she returned to New York), and therefore "would not be allowed to attend during the 2020-21 school year." R. 709. On April 27, 2021, plaintiff filed a petition challenging that determination, but on September 13, 2021, the Commissioner of the New York State Education Department dismissed the petition as untimely. R. 709-12. The Commissioner noted that petitioner retained "the right to reapply for admission, on the student's behalf, if and when they submit sufficient proof thereof." R. 711.[5]

In January 2021 (while still in the Bahamas), plaintiff Ambrister entered into a contract with iBrain for the 2021-22 extended school year (July 7, 2021-June 24, 2022). R. 403-09. The contract quoted a total price (including tuition and related services) of $215,260. R. 403-04. However, if Ambrister sought funding from the DOE, her payment obligations would be "suspended . . . until a final determination/decision is entered by an administrative judge, agency, or appellate court, and then all monies then-due will become immediately due within 30 days of the final adjudication." R. 404.[6]

Nothing in the record reveals when (or whether) plaintiff requested an IEP for the 2022-23 school year. See R. 56 ("There was no evidence presented that Student ever re-applied to New York City Schools."). Nonetheless, the DOE "sent a meeting notice to [plaintiff] on January 5, 2022," id.; conducted a psychoeducational evaluation of R.D. on January 13, 2022, R. 46, 430-36; obtained a social history update (via phone with plaintiff) on January 18, 2022, R. 427-29; and

---

[5] On December 14, 2021, plaintiff filed an Article 78 proceeding in state court to challenge the Commissioner's decision, but on July 1, 2022, the court dismissed the petition on jurisdictional grounds. See Decision and Order, *In the Matter of the Application of Rhonda Ambrister*, Index No. 910331/2021 (N.Y. Sup. Ct., Albany Co., July 1, 2022).

[6] On July 26, 2021, plaintiff entered into a separate contract with Sisters Travel and Transportation Services (Sisters) to transport R.D. to and from iBrain for the 2021-22 extended school year, for $252 per trip R. 411-15. Sisters is owned and operated by Patrick Donohue's wife. *See About Us*, iBRAIN, https://ibrainnyc.org/about-us.

convened a Committee on Special Education (CSE) meeting on February 11, 2022, SMF ¶ 12, which plaintiff attended, R. 568, along with iBrain Special Education Coordinator Tiffany Semm, other iBrain staff members, and attorney William Frazier. R. 631.[7] The CSE produced R.D.'s 2022 IEP, with a projected implementation date of February 21, 2022. *Id.*; R. 573. The 2022 IEP classifies R.D.'s disability as Traumatic Brain Injury (TBI) and includes an extended (12-month) school year, in a 6:1:1 class, in a District 75 specialized public school. SMF ¶ 13; R. 16, 622. The 2022 IEP further prescribes that she be provided with five 60-minute sessions per week of individual OT, four 45-minute sessions per week of individual PT, five 60-minute sessions per week of individual SLT, one 60-minute group session per month of parent counseling and training, full time 1:1 paraprofessional services, school nurse services as needed, an assistive technology device to be used throughout the day, and special transportation services. SMF ¶¶ 14-15; R. 622-23. The 2022 IEP does not include music therapy, VES, or HES. SMF ¶ 16.

On March 17, 2022, plaintiff filed her 2022 DPC (dated March 16, 2022), challenging the 2022 IEP. *See* SMF ¶ 18.[8] Plaintiff argued that the 2022 IEP was both procedurally and substantively inadequate, and sought, among other things, an "order directing payment by the DOE directly to iBRAIN for the full cost of [R.D.'s] tuition, related services, and a 1:1 paraprofessional for the 2021-2022 extended school year." R. 186-88; SMF ¶ 18.[9] Plaintiff also requested that her

---

[7] Frazier is the Chief of Staff of the Brain Injury Rights Group (BIRG), a law firm founded by Patrick Donohue. *See* https://braininjuryrights.org/meet-our-team/. BIRG provides "legal representation and in-depth advocacy nationwide to families with persons with disabilities from birth through school age and beyond." *See Firm Overview*, Brain Injury Rights Group, https://braininjuryrights.org/firm-overview/.

[8] Throughout the administrative process, plaintiff was represented by BIRG attorneys, as she is in this Court.

[9] The 2022 DPC did not request an order directing DOE to pay R.D.'s tuition or other iBrain charges beyond the end of the 2021-22 school year.

new case be consolidated with what remained of the cases concerning the 2020 CSP and the 2020 and 2021 IEPs. *See* R. 95-96, 184.[10]

On March 30, 2022, the DOE sent plaintiff a Prior Written Notice, R. 556-59, summarizing the 2022 IEP, and a School Location Letter, R. 560-61, notifying plaintiff that R.D. was again assigned to the Horan School. *See* SMF ¶ 21.

On April 20, 2022, IHO Jennifer Mazzei denied the consolidation request. R. 96.[11] She then conducted a four-day remote hearing regarding the 2022 IEP, beginning on June 27 and concluding on July 6, 2022. SMF ¶¶ 20, 24; R. 815-1177 (hearing transcript). On the first day of the hearing, plaintiff's counsel clarified that her claims accrued on February 11, 2022, when the 2022 IEP was issued. R. 979 ("[W]e would be challenging from that day forward.").[12] The DOE presented two witnesses: Dorothy Pfeiffer, a School Psychologist, and Michelle Lefaivre, Assistant Principal at the Horan School. Plaintiff (referred to as "Parent" or "Parents" by the IHO) testified on June 28, 2022 (from the Bahamas, *see* R. 1067-68, 1102), and presented the testimony of Tiffany Semm, Director of Special Education at iBrain. Both plaintiff and the DOE were afforded the opportunity to offer witness testimony, cross-examine opposing witnesses, and offer

---

[10] The DOE's residency determination did not fully resolve plaintiff's earlier challenges regarding the 2020 CSP and the 2020 and 2021 IEPs. On February 28, 2022, an SRO ruled that R.D. was entitled to a FAPE for the limited period of May 10 to September 13, 2021, and remanded to the IHO to determine whether the DOE offered her a FAPE for that period. *See* R. 95, 103 n.2.

[11] On June 28, 2022, plaintiff brought a separate action in this Court to challenge the "erroneous aspects" of the SRO's decision regarding the 2020 CSP and the 2020 and 2021 IEPs. Compl. (Dkt. 1) ¶¶ 146-59, *Ambrister v. N.Y.C. Dep't of Educ.*, No. 22-CV-0551-JGLC (S.D.N.Y. June 28, 2022). That case remains pending.

[12] As noted above, plaintiff's 2022 DPC sought an order directing payment by the DOE to iBrain for the 2021-22 school year, R. 188, not the 2022-23 school year. Thus, the relevant period for which plaintiff seeks funding in this action is February 11-June 24, 2022.

documentary evidence in support of their respective positions. The parties submitted closing briefs on August 1, 2022. R. 197-253.

Plaintiff testified that R.D. was receiving remote services from iBrain while in the Bahamas, R. 568, 1110, and that she would "probably" return to New York with R.D. in "about two or three weeks." R. 1068. However, the record does not provide any detail about the remote services provided after R.D. moved back to the Bahamas for the second time in April 2022. Nor does it disclose whether, or when, R.D. returned to New York.

On June 15, 2022 (while in the Bahamas), plaintiff entered into a contract with iBrain for the 2022-23 extended school year (July 6, 2022-June 23, 2023). R. 121-26. Once again, the contract provided that if plaintiff sought DOE funding, her tuition payment obligations would be "suspended . . . until a final determination/ decision is entered by an administrative judge, agency, or appellate court, and then all monies then-due will become immediately due within 30 days of the final adjudication." R. 122.

On August 29, 2022, IHO Mazzei issued her Findings of Fact and Decision, concluding that the DOE did offer R.D. a FAPE for the 2021-22 and 2022-23 school years. SMF ¶ 25; R. 56. IHO Mazzei found that plaintiff was "fully involved in the IEP process," R. 56, and that the March 30, 2022 School Location Letter was not untimely. *Id.* The IHO further found that the 2022 IEP was "reasonably calculated" to enable R.D. to receive educational benefits, R. 57, and that even though R.D. could benefit from music therapy, VES, and HES, they were not "required for [R.D.] to receive a FAPE." *Id.* The IHO agreed with plaintiff that iBrain would have been deemed an appropriate unilateral placement for R.D. had the DOE denied her a FAPE. SMF ¶ 26; R. 70. However, the IHO found, even if the DOE had denied R.D. a FAPE, the equities would require a reduction in the total amount of iBrain tuition awarded or a full denial of award. SMF ¶ 27. The

IHO explained that plaintiff and R.D. moved to New York from the Bahamas, at iBrain's urging, "for the sole purpose of attending [iBrain]," R. 74; that plaintiff "never had any intention of availing [R.D.] of a public-school placement," R. 75; that R.D. had been in the Bahamas since April 30, 2022, and it was unclear what remote services were actually being provided to her "while she remains out of the jurisdiction," *id.*; that plaintiff never made any payment to iBrain, "not even a deposit," R. 76; and that plaintiff was unsure whether she would ever be required to pay, even if she did not prevail in her legal challenge to the 2022 IEP. *Id.* Finally, the IHO found that because plaintiff disagreed with the DOE's evaluation concerning R.D.'s need for VES and HES, she was entitled to "full independent educational evaluations at public expense" in those two areas. SMF ¶ 31; R. 79.

Plaintiff appealed the unfavorable portions of the IHO's decision to the DOE's Office of State Review. SMF ¶ 29. In a written decision dated December 1, 2022, SRO Carol H. Hauge affirmed the IHO's finding that DOE offered R.D. a FAPE. SMF ¶ 32; R. 14-42. The SRO found that the DOE's March 30, 2022 School Location Letter was untimely because it post-dated the February 21, 2022 implementation date of the IEP. SMF ¶ 34; R. 27 ("[I]mplicit in a district's obligation to implement an IEP is the requirement that, at some point prior to or contemporaneous with the date of initiation of services under an IEP, the district must notify parents in a reasonable fashion of the bricks and mortar location of the special education program and related services in a student's IEP."). However, the SRO held, the delay did not "result in any harm that would rise to the level of a denial of a FAPE," R. 28, because R.D. had been assigned to the Horan School in 2021, such that plaintiff already knew "where the student was supposed to attend school for the 2021-22 school year." *Id.* The SRO further concluded that, since plaintiff had rejected the 2021 IEP – and since she complained in her 2022 DPC that *any* District 75 placement for R.D. would

be inappropriate – she never intended to enroll plaintiff in a public school. R. 29. "[A]ccordingly, the untimely school location letter at issue did not affect the [plaintiff's] decision to reject the February 2022 IEP." *Id*.

SRO Hauge rejected certain of plaintiff's claims concerning the Horan School (for example, that it lacked adequate air conditioning or separate locations for certain related services) because these issues were not raised in the 2022 DPC. R. 29-30. Turning to the claims that were properly raised, the SRO found that the DOE's failure to recommend either music therapy or VES did not result in the denial of a FAPE, R. 31-32, 34-36, and that the record did not support a finding that R.D. was hard of hearing or otherwise required HES. R. 32-34. Because R.D. "never attended the [assigned] pubic school site," the SRO dismissed as "speculative" plaintiff's contention that the Horan School would be incapable of providing the services set out in the 2022 IEP, including the recommended OT and PT. R. 37-38. Similarly, SRO Hauge rejected plaintiff's complaint that the Horan School "would not have provided [R.D.] with appropriate peer models" (because it largely served students with autism) as "speculative," noting that "neither the IDEA nor federal regulations require students who attend a special class setting to be grouped in any particular manner," including by "disability category." R. 39-41. Having found that the 2022 IEP was "reasonably calculated to enable [R.D.] to receive educational benefit," the SRO did not consider whether iBrain was an appropriate unilateral placement for R.D. or whether the equities favored plaintiff. SMF ¶ 33; R. 42.

C.    **This Action**

In this Court, plaintiff again argues, that the 2022 IEP was "procedurally defective," primarily because the DOE failed to send a timely School Location Letter, Pl. Mem. (Dkt. 27) at 13-15, and "substantively defective," because it failed to recommend music therapy, VES, or HES,

*id*. at 15-18, and because the classes at the Horan School "would NOT be composed of students with disabilities with similar individual needs." *Id*. at 19. Additionally, plaintiff contends, the Horan School "could not even implement their proposed IEP," *id*. at 21, because it did not have enough occupational and physical therapists and because "most pull-out sessions for OT and PT at Horan [School] take place in the hallway, where there is no air conditioning." *Id*. at 21.

Defendants, for their part, agree with the SRO that the late School Location Letter did not render the 2022 IEP procedurally defective, because plaintiff already knew that R.D. was assigned to the Horan School, and in any event, the delay "did not affect [her] decision to reject the February 2022 IEP." Def. Mem. (Dkt. 32) at 13-14. Defendants further contend that plaintiff's "preference of having music therapy, hearing education services, and vision educational services" did not render the 2022 IEP substantively inadequate, *id*. at 15-16, and that her complaints about class grouping and staffing at the Horan School are "purely speculative," as R.D. never attended her public school placement. *Id*. at 16-17.

## II.    DISCUSSION

### A.    Legal Standards

The "IDEA established a two-part inquiry for courts reviewing [state] administrative determinations" under the IDEA. *Grim*, 346 F.3d at 381; *see also* 20 U.S.C. § 1415. First, the court asks whether "the State complied with the procedures set forth in the Act." *Grim*, 346 F.3d at 381. However, "not every procedural error will render an IEP legally inadequate." *M.H.*, 685 F.3d at 245. Second, the court considers whether the IEP developed by the school district is "reasonably calculated to enable the child to receive educational benefits." *Grim*, 346 F.3d at 381 (quoting *Rowley*, 458 U.S. at 206-07); *see also Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1583 (D.C. Cir. 1984) (because public "resources are not infinite," federal law "does not secure

the best education money can buy; it calls upon government, more modestly, to provide an appropriate education for each [disabled] child.").

If the answer to both of these questions is yes, the reviewing court's inquiry ends there, and the parent's motion should be denied. *M.H.*, 685 F.3d at 258. If, however, an IEP is deficient – either procedurally or substantively – the court then proceeds to the remaining prongs of the *Burlington/Carter* test, asking "whether the private schooling obtained by the parents [for the child] is appropriate to the child's needs," *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009), and taking into account "equitable considerations relating to the reasonableness of the action taken by the parents[.]" *Id.* (alteration and internal quotation marks omitted). "As the party commencing the administrative review, the parents bear the burden of persuasion as to the inappropriateness of [the school district's] IEP and the appropriateness of the private services." *Id.*

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H.*, 685 F.3d at 226); *accord Killoran v. Westhampton Beach Sch. Dist.*, 2023 WL 4503278, at *2 (2d Cir. July 13, 2023) (summary order). The district court must conduct "an independent review of the administrative record and make a determination based on a 'preponderance of the evidence,'" but "the role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (quoting *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1120 (2d Cir. 1997). The review "is by

no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206.

"The standard for reviewing administrative determinations 'requires a more critical appraisal of the agency determination than clear-error review[,] but nevertheless falls well short of complete *de novo* review[.]'" *M.H.*, 685 F.3d at 244 (quoting *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086-87 (1st Cir. 1993)) (cleaned up). Typically, the court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 240 (cleaned up). "[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States." *Id.* (quoting *Rowley*, 458 U.S. at 208). Conversely, where the challenged administrative determination implicates a "pure legal question," the court owes no deference to the underlying administrative ruling. *Mondano v. Banks*, 2024 WL 1363583, at *7 (S.D.N.Y. Mar. 30, 2024); *see also, e.g.*, *Montalvan v. Banks*, 2023 WL 8720296, at *8 (S.D.N.Y. Dec. 18, 2023) (exercising *de novo* review where SRO held that plaintiff's "systemic" challenge to New York's decision to close schools during the COVID pandemic was "beyond the limited jurisdiction of the IDEA's impartial hearing process").

**B. Deference**

Plaintiff argues that the Court need not defer to the SRO's decision because neither the procedural issues nor the substantive issues presented in this action are "based on 'persistent and difficult questions of educational policy,'" but rather, on interpretation of "federal law" and "statutory requirements." Pl. Mem. at 12-13. Plaintiff is incorrect. The SRO was of course required to apply federal law and statutory requirements when determining whether the DOE offered R.D. a FAPE. But plaintiff does not object to his recitation of the governing statutory and regulatory

scheme (*see* R. 14-15, 21-23); nor does she contend that the SRO applied the wrong legal standards to the evidentiary record before him. (*See* R. 24-41.) Plaintiff simply disagrees with the SRO's conclusions as to the procedural and substantive adequacy of the 2022 IEP. Because she fails to identify any "pure legal question" subject to *de novo* review, *Montalvan*, 2023 WL 8720296, at *8, both branches of the SRO's decision are entitled to deference in this Court. *See M.H.*, 685 F.3d at 243 (the "requirement that courts give 'due weight' to administrative bodies implementing the statute applie[s] to both 'substantive' and 'procedural' challenges") (quoting *Grim*, 346 F.3d at 382-83).

Deference "is particularly appropriate when," as here, "'the state hearing officers' review has been thorough and careful' and is 'reasoned and supported by the record.'" *FB v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 581 (S.D.N.Y. 2013) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)). Moreover, "a district court should defer to administrative decisions where," as here, "the IHO and SRO decisions are in agreement." *Bird v. Banks*, 2023 WL 8258026, at *4 (S.D.N.Y. Nov. 29, 2023) (citing *C.W. ex rel. W.W. v. City Sch. Dist. of N.Y.*, 171 F. Supp. 3d 126, 131-32 (S.D.N.Y. 2016)).

## C.    The 2022 IEP was Procedurally Adequate

The "initial procedural inquiry," which is the first step of the Court's two-part inquiry, is "no mere formality." *Walczak*, 142 F.3d at 129. It is well-settled, however, that procedural errors alone – even "extensive delay[s]" in a school district's development or review of an IEP – do not necessarily entitle parents to relief. *Grim*, 346 F.3d at 381-82; *see also Jusino v. N.Y.C. Dep't of Educ.*, 2016 WL 9649880, at *6 (E.D.N.Y. Aug. 8, 2016) ("[P]rocedural violations in and of themselves do not amount to a *per se* denial of FAPE."), *aff'd*, 700 F. App'x 25 (2d Cir. 2017). Under the governing statute, relief is warranted only if the alleged procedural inadequacies "(I)

15

impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). Thus, a plaintiff alleging a procedural violation must show a "causal connection" between the violation and one of the harms set out in § 1415(f)(3)(E)(ii). *Jusino*, 2016 WL 9649880, at *6.

Plaintiff Ambrister argues that her opportunity to participate in the DOE's decision-making process was "significantly impeded" in two ways: first, by the DOE's failure to send timely notice of the school location where the 2022 IEP would be implemented, Pl. Mem. at 14; and second, by an alleged "policy-level determination" by the DOE "that music therapy should be categorically dismissed." Pl. Opp. at 6. Defendants do not dispute that there was a delay in sending the school location information, but agree with the SRO that the delay did not "result in any harm." Def. Mem. at 12 (citing 20 U.S.C. § 1415(f)(3)(E)(ii)). Additionally, in their reply brief, defendants dispute plaintiff's contention that DOE had a policy prohibiting music therapy and argue that "the record before the Court clearly shows that Plaintiff had the opportunity to meaningfully engage with the Student's IEP." (Dkt. 40 at 2).

### 1.    Delay

The SRO determined that the School Location Letter should have been sent on or before February 21, 2022 (the implementation date of the 2022 IEP), not because any federal or state regulation sets that deadline but because it is "[i]mplicit in a district's obligation to implement an IEP" that the parents be notified of the "bricks and mortar location of the special education program" offered to their child "at some point prior to or contemporaneous with the date of initiation of services under an IEP." R. 27. In this Court, both parties accept that ruling, *see* Pl.

Mem. at 14; Def. Mem. at 12, but disagree as to whether the delay in sending the letter – until March 30, 2022 – deprived plaintiff of a FAPE.

Plaintiff argues that the late notice deprived her of "relevant information necessary to participate in the decision-making process," Pl. Mem. at 13, but never explains what she would or could have done differently had she been told in February (rather than March) that R.D.'s assigned public school for the 2021-22 and 2022-23 school years was the Horan School. That is because, as the SRO correctly observed, R. 28, plaintiff already knew that R.D. was assigned to the Horan School for the 2021-22 school year. She was notified of that assignment on June 16, 2021. R. 399.

Moreover, plaintiff made it clear, both in 2021 and in 2022, that she would not accept *any* District 75 placement for R.D. On June 23, 2021, after visiting the Horan School, *see* R. 1081, plaintiff expressly "reject[ed] the DOE's proposed program and placement," explaining that "none" of the DOE's proposed IEPs "are designed to enable the Student to receive educational benefits or receive appropriate related services." (R. 401-02.) Plaintiff added that the DOE's "District 75 public school recommendations cannot be implemented, as proposed in the IEPs, during the regular school day," and that she was "concerned about the appropriateness of the recommended school, class grouping, and related services, including transportation." (R. 402.) Similarly, in her 2022 DPC, plaintiff challenged "any and all IEPs offered to the Student" for the 2021-22 extended school year, R. 186, arguing that *any* District 75 public school would be "woefully inappropriate" for R.D., because (i) "6:l:l classes in District 75 schools are primarily for students on the autism spectrum, who have vastly different educational and behavioral needs than [R.D.]"; (ii) "a District 75 school would subject [R.D.] to danger, as she is visually impaired, lacks safety awareness, and is unable to protect herself"; and (iii) "[i]t is mathematically impossible for the DOE to provide [R.D.] with all of her related services in a typical school week in a District 75 school." R. 186-87.

Since "the untimely school location letter at issue did not affect [plaintiff's] decision to reject the February 2022 IEP," R. 29, and since plaintiff cannot point to any other prejudice flowing from the delay, the SRO correctly concluded that the procedural deficiency did not "result in any harm that would rise to the level of denial of a FAPE." R. 28. *See Grim*, 346 F.3d at 381-82 (school district's "extensive delay" in developing and reviewing three successive IEPs did not deprive child of a FAPE because, among other things, her parents placed her in private school for all three school years, and "there is no suggestion in the record that the Grims would have altered their placement decision had their challenges to the IEP been resolved in a more timely fashion"); *Jusino*, 2016 WL 9649880, at *6 (parents who allegedly received late notice of school placement failed to show any "causal link between the timing of notice and the denial of FAPE" where the delay did not affect their decision to enroll their child in private school or their ability to challenge the IEP); *R.B. v. N.Y.C. Dep't of Educ.*, 2016 WL 2939167, at *9 (S.D.N.Y. May 19, 2016) ("Because the record indicates that the Parents were not prejudiced by the lack of prior written notice, the SRO's determination that D.B. was not denied a FAPE on this basis must be affirmed.") (Nathan, J.), *aff'd*, 689 F. App'x 48 (2d Cir. 2017); *Tarlowe v. N.Y.C. Bd. of Educ.*, 2008 WL 2736027, at *6 (S.D.N.Y. July 3, 2008) ("Without any evidence of harm or prejudice resulting from the timing of the notice, plaintiffs have not established that the failure to provide earlier notice of the specific placement denied Zachary a free appropriate public education.").

## 2.    Predetermination

In this Court, plaintiff argues that the 2022 IEP was procedurally deficient because the DOE's decision not to recommend music therapy was "predetermined," that is, that the DOE failed to provide R.D. with music therapy "because it simply *does not offer* that service and *does not wish* to offer that service," thus disregarding the "highly specialized needs of students with brain-based

injuries." Pl. Opp. at 5-6. A predetermination claim is a procedural challenge, *T.P.*, 554 F.3d at 253, premised on the charge that the school district "denied [the parents] meaningful participation in the IEP process by improperly predetermining [the child's] educational program" rather than coming to the CSE meeting with an "open mind." *Id.*; *accord*, *E.E. v. N.Y.C. Dep't of Educ.*, 2018 WL 4636984, at *6 (S.D.N.Y. Sept. 26, 2018) (rejecting predetermination challenge where school district personnel "discussed everything" at the CSE and listened to parent when he voiced objections).

However, plaintiff did not raise her present predetermination claim in her 2022 DPC, or before the IHO, or before the SRO.[13] Nor did she raise it in her opening brief in this Court, which characterized the DOE's failure to recommend music therapy for R.D. solely as a *substantive* failure to provide a FAPE. *See* Pl. Mem. at 16-18. Similarly, the DOE's opening brief (which also functioned as its opposition brief with respect to plaintiff's summary judgment motion) discussed music therapy only in the context of the substance of the IEP. *See* Def. Mem. at 14-17. Thereafter, in her reply brief, plaintiff argued – for the first time – that the DOE "predetermined" that music therapy would not be provided because it had already made a "policy-level determination that music therapy should be categorically dismissed," thereby denying plaintiff "meaningful access to the decision-making process." Pl. Opp. at 5-8.

Arguments raised for the first time on reply are improper, and may be disregarded for that reason alone. *See*, *e.g.*, *Peralta v. CB Hosp. & Events, LLC*, 2024 WL 916523, at *5 (S.D.N.Y. Mar. 4, 2024) ("the Court may disregard issues raised for the first time in reply") (collecting cases);

---

[13] In the DPC, plaintiff made a different argument: that the DOE denied music therapy because of "DOE's inability to provide the service." R. 186. Before the IHO, plaintiff asserted (in a single sentence) that the CSE "predetermined the outcome of the February 11th IEP" in that it was "intent on making a District 75 public school recommendation for R.D.," and that the DOE "was not going to recommend related services that R.D. requires in order to receive a FAPE." R. 212. She did not argue, in that forum, that the DOE simply "does not wish to offer" music therapy as a policy choice.

*Jacobs v. Citibank, N.A.*, 2004 WL 2389897, at *2 (S.D.N.Y. Oct. 25, 2004) ("Arguments made for the first time in a reply memorandum of law or reply brief are, generally, not considered by a court."). Thus, even if plaintiff had raised her predetermination claim administratively, allowing the IHO and SRO to properly consider it, she could not expect this Court to grant relief based on an argument that she withheld until she filed her reply brief.

Moreover, plaintiff's predetermination claim lacks merit. The only "direct evidence" she cites in support of her conclusion that the DOE made a "policy-level determination that music therapy should be categorically dismissed," Pl. Opp. at 6, is the hearing testimony of DOE School Psychologist Dorothy Pfeiffer, who stated that she did not recall the details of the discussion at R.D.'s IEP meeting regarding music therapy, but "[t]ypically, we would recommend that – we would state that the Department of Education is not recommending music therapy." R. 870-71; *see also* R. 928 (Pfeiffer, stating on cross examination that music therapy "is not a typical service provided within the New York City Department of Education."). At no point, however, did Pfeiffer state that the DOE's "typical" position was dictated by a district-wide policy determination, much less that requests for music therapy would be "categorically dismissed" in all cases. To the contrary: when asked whether a student who required music therapy would be able to get it in a public school, Pfeiffer replied, "I believe every service is case by case, and that there would probably be a need for it to happen." R. 908.

"[T]he critical consideration with respect to predetermination is whether the CSE possessed 'an open mind as to the content of [the] IEP.'" *E.E.*, 2018 WL 4636984, at *6 (quoting *T.P.*, 554 F.3d at 253); *see also R.B.*, 2016 WL 2939167, at *7) ("An IEP is not predetermined so long as the district involves the parent in the development of the IEP with an 'open mind.'"). Thus, it does not violate the IDEA for district representatives to "come with pre-formed opinions regarding the best

course of action for the child," as long as they are "willing to listen to the parents and the parents have an opportunity to make objections and suggestions." *Id.* (quoting *DiRocco ex rel. M.D. v. Bd. of Educ. of Beacon City Sch. Dist.*, 2013 WL 25959, at *18 (S.D.N.Y. Jan. 2, 2013)). Similarly, "[t]he fact that the District staff ultimately disagreed with the opinions of plaintiffs and their outside professionals does not mean that plaintiffs were denied the opportunity to participate in the development of the IEP's, or that the outcomes of the CSE meetings were 'pre-determined.' A professional disagreement is not an IDEA violation." *P.K. ex rel. P.K. v. Bedford Cent. Sch. Dist.*, 569 F. Supp. 2d 371, 383 (S.D.N.Y. 2008); *accord*, *E.E.*, 2018 WL 4636984, at *6 ("Mere disagreement between the Parent and district officials does not compel the conclusion that the IEP was pre-determined."); *R.B.*, 2016 WL 2939167, at *7 (while parents are entitled to "provide input in the IEP process," they "do not have the right to veto decisions with which they disagree").

Here, the record shows that plaintiff had a robust opportunity to engage – and did in fact engage – with the CSE during the IEP process. On January 18, 2022, the DOE conducted a phone interview with plaintiff in order to update R.D.'s social history. R 427-29. Plaintiff then attended and participated in the IEP meeting on February 11, 2022, during which she "expressed [her] concern" about various aspects of the DOE's recommended program. R 630. She was accompanied to the IEP meeting by multiple representatives from iBrain, and by a lawyer from BIRG. R. 631. Moreover, plaintiff testified that while she disagreed with some DOE recommendations, she agreed with others, R 1069-70, and Pfeiffer testified that while the 2022 IP did not include music therapy, it targeted the same skills through other services.[14] On these facts, I cannot conclude that

---

[14] For example, she explained, where the iBrain program used a "hello song" at the beginning of a music therapy session to help R.D. transition and to teach more generalized skills "with respect to greeting and communication," R. 877, the DOE's IEP proposed to address the same skills "through the special education program and potentially related services, including speech and language therapy." R. 878-79. Similarly, where iBrain used music therapy to develop fine motor skills, through "strumming a guitar or grasping and flipping the rain stick," R. 880, the DOE proposed to

the CSE lacked "an open mind" as to R.D.'s IEP or that plaintiff was otherwise deprived of her right to participate meaningfully in the IEP process. *See R.B.*, 2016 WL 2939167, at *7-8 (2013-14 and 2014-15 IEPs were not "impermissibly predetermined" where a parent was present at each IEP meeting, "and had an opportunity to voice her concerns," and the IEP reflected "several of the Parents' concerns and also incorporates the view of D.B.'s teacher" at the private school chosen by the parents). Plaintiff has therefore failed to show that 2022 IEP was procedurally inadequate.

### D.    The 2022 IEP was Substantively Adequate

Plaintiff contends that the 2022 IEP was substantively inadequate because it failed to include three specific "related services" – music therapy, HES, and VES – that R.D. received at iBrain. Pl. Mem. at 15-18. She further argues that the 2022 IEP violated New York State law, which requires that special education students be grouped with students with "similar individual needs," 8 N.Y.C.C.R. § 200.6(a)(3), because the placement at the Horan School would result in R.D. being grouped with students with Autism Spectrum Disorder, rather than students with TBI or other needs more similar to her own. *Id*. at 18-19; Pl. Opp. at 15-16. Finally, she argues that the Horan School is unable to meet R.D.'s needs because it does not have air conditioning in the hallway, where students receive one-on-one services throughout the school day, and does not have enough therapists. Pl. Mem. at 21.

Defendant counters that the test for FAPE is not whether the public school provides "every special service necessary to maximize each handicapped child's potential," but simply whether its IEP is "reasonably calculated to enable the child to receive educational benefits." Def. Mem. at 14

---

address the same skills through "special education and related services," including "occupational therapy." *Id*. On this record, SRO Hauge found that "music therapy at iBrain offered a different approach for addressing the student's skill needs that were also identified and addressed by the February 2022 IEP" through its recommended "related services, annual goals, and management needs," and concluded that the fact "that the CSE did not recommend music therapy specifically did not result in a denial of a FAPE." R. 32.

(quoting *R.B. v. N.Y.C. Dep't of Educ.*, 589 F. App'x. 572, 576 (2d Cir. 2014)). Defendant argues that the SRO correctly found that R.D.'s needs could be adequately addressed by the services offered in the 2022 IEP – without music therapy, VES, or HES – and that, in any event, R.D.'s hearing was "within normal limits," *id.* at 15, making sign language instruction unnecessary. As for the asserted deficiencies of the Horan School, defendant argues that plaintiff's challenge is entirely "speculative," as R.D. never attended any DOE public school. *Id.* at 16-17.

Defendant is, for the most part, correct.

1.    **Specific Services.**

The fact that a particular service has been shown to be beneficial to a student does not. without more, require a school district to offer that service. *See, e.g., E.E.*, 2018 WL 4636984, at *8 (although private school program with 2:1 student/teacher ratio may have been the "optimal learning environment" for plaintiff's child, "that is not what the IDEA requires"). This principle has been frequently applied to music therapy. *See G.S. v. N.Y.C. Dep't of Educ.*, 2016 WL 5107039, at *12 (S.D.N.Y. Sept. 19, 2016) ("[T]he lack of music therapy in the IEP did not deny K.S. a FAPE."); *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 592 (S.D.N.Y. 2013) ("while perhaps desirable, music therapy is not necessary to provide J.K. a FAPE"). The test, under the IDEA, is not whether the school district's IEP "maximize[s] each child's potential," but whether it opens the doors of education in a "meaningful" way, *Walczak*, 142 F.3d at 130 (quoting *Rowley*, 458 U.S. at 199), and is "likely to produce progress, not regression." *Id.* (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 248 (5th Cir. 1997)). Moreover, the provision of a particular service, for a particular child, is precisely the type of "persistent and difficult question[] of educational policy" as to which the courts appropriately defer to the well-reasoned judgment of the IHOs and SROs charged with making those decisions. *M.H.*, 685 F.3d at 240; *see also id.* at

244 ("[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures[.]").

In this case, both the IHO and the SRO agreed – after an extensive discussion of the evidence concerning the benefits of music therapy, VES, and HES for R.D. – that the 2022 IEP was not inadequate due to its failure to offer these three related services. *See* R. 31-37, 57-64. Their conclusions are entitled to considerable deference. "The IHO and SRO's unanimity makes deference 'particularly apt' here." *Rivas v. Banks*, 2023 WL 8188069, at *7 (S.D.N.Y. Nov. 27, 2023) (quoting *B.K. v. N.Y.C. Dep't of Educ.*, 12 F. Supp. 3d 343, 360 (E.D.N.Y. 2014)), *reconsideration denied*, 2024 WL 292276 (S.D.N.Y. Jan. 25, 2024).

As to music therapy, the SRO agreed with School Psychologist Pfeiffer that R.D.'s educational needs could be "addressed by other supports and services that the February 2022 CSE recommended." R. 31. For example, where iBrain used music therapy in part as a "form of exercise," to "stimulate functional movement patterns," DOE addressed the same issues "through OT and PT services." R. 32. Thus, "[a]lthough the record demonstrates that music therapy was beneficial for [R.D.], it does not support the conclusion that [she] could not have a FAPE without it. *N.K.*, 961 F. Supp. 2d at 592.

The SRO likewise found that the 2022 IEP adequately addressed R.D.'s vision goals, including by "provid[ing] management strategies such as visual and tactile exploration, sensory breaks to encourage visual attention, a highly structured classroom with less stimulus from visual distractions, visual aids and large pictures, visual cues when using assistive technology to communicate, and set up of communication device within the student's eyesight and reach." R. 36. The SRO also noted, correctly, that although iBrain assessed R.D. observationally with likely

visual impairments, particularly in her lower field of vision and peripheral fields, R. 35, plaintiff herself reported that "the student's vision was normal," R. 34; *see also* R. 427, and no ophthalmological information was available to the CSE. R. 36. Thus, in the March 30, 2022 Prior Written Notice, the DOE "requested additional medical information to support the request for vision services," but as of the hearing before the IMO, had not yet received it. *Id*.; *see* also R. 557 (Prior Written Notice), R. 890 (Pfeiffer, explaining that the DOE requires an "updated eye report" to support a request for VES).[15]

Neither plaintiff nor iBrain contends that R.D. is hard of hearing. *See* R. 270, 295, 366, 427, 888. Beginning in 2022, however, iBrain recommended sign language support (along with auditory input and visual supports) to improve R.D.'s "ability to attend, to complete tasks, and to communicate during activities." R. 437, 460-63. The SRO acknowledged the benefits of this technique, but noted that the DOE's 2022 IEP also "recommended the use of instructional supports such as verbal, physical, tactile and visual cues, sensory stimulation, redirection to task, a multimodal approach, and sensory breaks," R. 34, and concluded that "[t]o the extent that in this instance the hearing record shows that the student benefitted from sign language as another method to improve her attention and communication skills, it does not support a finding that the student required hearing education services per se to provide such support." *Id.*

Nothing in the administrative record undermines this conclusion. Indeed, in support of her contention that the DOE's failure to recommend HES constitutes a "clear denial of a FAPE," Pl.

---

[15] As noted above, the IHO ordered the DOE to fund independent educational evaluations with providers of plaintiff's choosing in vision education services and hearing education, R. 78-79, and further ordered the district to reconvene a CSE meeting to consider the additional data from those evaluations. SMF ¶ 31; R. 79. Plaintiff did not object to this portion of the IHO's decision. Rather, she argued to the SRO – and now argues to this Court – that the DOE should have offered both VES and HES without any objective data concerning whether and to what extent R.D.'s vision and hearing were impaired.

Mem. at 17, plaintiff offers only the observation that R.D. "would benefit from sign language supports." *Id*. That may be true. Plaintiff has not established, however, that the absence of such supports in the challenged IEP rendered it inadequate. *See R.B. v. N.Y.C. Dept. of Educ.*, 2013 WL 5438605, at *15 (granting judgment to the DOE where the record indicated that D.B. "may have *benefited* from" additional services at iBrain, but "contains no indication that such services were *necessary*"); *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 215 (2d Cir. 2012) ("The IDEA guarantees only that students with disabilities are provided an appropriate education, not one that provides everything that might be thought desirable by loving parents.") (internal quotation marks omitted).

### 2.  Horan School

Ordinarily, "[i]n determining the adequacy of an IEP, both parties are limited to discussing the placement and services specified in the written plan and therefore reasonably known to the parties at the time of the placement decision." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 187 (2d Cir. 2012). Consequently, "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." *Id.* at 195; *accord*, *J.C. v. N.Y.C. Dep't of Educ.*, 643 F. App'x 31, 33 (2d Cir. 2016) (summary order).

In *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015), the Court of Appeals announced a limited exception to this rule, holding that parents are not required to send a child to a "facially deficient placement school prior to challenging that school's capacity to implement their child's IEP." *Id.* at 245 For example, "it is not speculative to conclude that an IEP recommending a seafood-free environment, for a child with a life threatening seafood allergy, could not be implemented at a proposed school that was not seafood free." *Id*. It is well-settled, however, that "grouping evidence is not the kind of non-speculative retrospective evidence that is permissible

under *M.O.*" *J.C.*, 643 F. App'x at 33 (rejecting parents' claim that assigned school was deficient because "the classroom C.C. would have been placed in did not contain an appropriate grouping of students under the IDEA or New York state law"); *see also Rivas*, 2023 WL 8188069, at *9 ("[C]ourts have consistently denied grouping challenges when parents decide not to enroll their children in DOE-assigned schools for the simple reason that the parents cannot know the students with whom their children will be placed when they reject the DOE placement."); *B.M. v. Pleasantville Union Free Sch. Dist.*, 2021 WL 4392281, at *21 (S.D.N.Y. Sept. 24, 2021) (after *M.O.*, "courts in this District have repeatedly rejected functional grouping claims like the ones Plaintiffs advance here") (collecting cases).

Here too, plaintiff's claim that the 6:1:1 classroom that R.D. would have been placed in at the Horan School would include students with autism, who "have different needs and are ambulatory," Pl. Mem. at 19, "is best understood as '[s]peculation that the school district [would] not [have] adequately adhere[d] to the IEP.'" *J.C.*, 643 F. App'x at 33 (quoting *R.E.*, 694 F.3d at 195) (alterations in original). Moreover, as the court pointed out in *Rivas* (where plaintiff, represented by BIRG, made arguments almost identical to those now made by Ambrister), "[a]s long as the assigned school enrolled five [other] students whose needs were sufficiently similar to S.C.'s to permit a functional grouping, then the school had the 'capacity to implement [his] IEP' by placing S.C. in an appropriate 6:1:1 classroom environment." 2023 WL 8188069, at *10 (second alteration in original). Therefore, plaintiff cannot rely on her grouping claim to impugn the adequacy of the 2022 IEP. The same is true of her speculation, *see* Pl. Mem. at 21, that the Horan School would not have enough physical therapists and occupational therapists to provide the mandated services to R.D.

### 3.    Air Conditioning

Finally, plaintiff cannot complain about the lack of air conditioning in the hallways of the Horan School, *see* Pl. Mem. at 21, because it was not raised in her DPC. *See R.E.*, 694 F.3d at 187 (the DPC "must list all of the alleged deficiencies in the IEP."); *Polanco v. Banks*, 2024 WL 2105530, at *2 (2d Cir. May 10, 2024) ("Unless the other party consents, a party requesting a due process hearing is typically precluded from raising issues regarding the IEP that she did not include in her due process complaint.") (citing 20 U.S.C. § 1415(f)(3)(B)). Consequently, as the SRO explained, the issue was "outside the scope of the impartial hearing." R. 29.

## III.    CONCLUSION

Having concluded that the 2022 IEP was "procedurally and substantively adequate," I "need not consider whether [the] private placement was appropriate" (although the parties concede that it was), nor whether the equities favor an award, to iBrain, of the cost of R.D.'s tuition and related services. *M.H.*, 685 F.3d at 258; *see also Rivas*, 2023 WL 8188069, at *12 ("Because the DOE offered S.C. a FAPE during that school year, the Parent is not entitled to reimbursement for her unilateral placement of S.C. at iBrain, and the Court need not address the remaining prongs of the *Burlington/Carter* test.").

For the reasons set forth above, I recommend, respectfully, that plaintiff's motion for summary judgment be DENIED and that defendants' cross-motion for summary judgment be GRANTED.

Dated: New York, New York
      August 9, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u><br><u>TO THIS REPORT AND RECOMMENDATION</u>

  The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Jessica G. L. Clarke at 500 Pearl St., New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Clarke. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).